**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALAN ETT,

          Plaintiff,

          v.

SPIRIT MUSIC GROUP, INC., SPIRIT MUSIC
COLLECTIVE, LLC, SPIRIT CATALOGUE
HOLDINGS SARL, SPIRIT MUSIC
COLLECTIVE SARL, LYRIC CAPITAL
MANAGEMENT GROUP, LP,

          Defendants.

---

SPIRIT MUSIC COLLECTIVE, LLC,

          Counter-Claimant,

          v.

ALAN ETT,

          Counter-Defendant.

Case No.: 1:24-cv-676

**JURY TRIAL DEMANDED**

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
THIRD AMENDED COMPLAINT AND COUNTER-CLAIMANT'S COUNTERCLAIM
AGAINST COUNTER-DEFENDANT ALAN ETT**

**ANSWER**

      Defendants, Spirit Music Group, Inc. ("SMG"), Spirit Music Collective, LLC ("SMC"),

Spirit Catalogue Holdings, SARL ("SCH"), Spirit TMC SARL ("LuxCo")[1] and Lyric Capital

Management Group, LP ("Lyric") (the "Defendants"), by their attorneys Sheppard, Mullin,

Richter & Hampton LLP, as and for their Answer to Plaintiff Alan Ett's ("Ett") Third Amended

Complaint herein, admit, deny or otherwise respond to Ett's allegations below.  However, many

---

[1]      Erroneously sued as Spirit Music Collective SARL.

of Ett's allegations either only partially quote from or attempt to characterize certain provisions in various agreements between the parties and other documents, including the APA, Ett's Employment Agreement, the Amendment to the Employment Agreement and the Indemnity Demand (all as defined in the Third Amended Complaint).  Defendants have, in good faith, attempted to admit, deny or otherwise respond to Ett's allegations regarding these agreements and documents; however, in doing so, Defendants maintain that the terms of the agreements control and the documents speak for themselves.  Accordingly, no admission or partial admission herein is intended to or shall be deemed to override the legal effect of said agreements or the content of such documents.

## NATURE OF THE ACTION

1.      Paragraph 1 is an introductory argumentative paragraph to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 1.

2.      Deny that the APA Defendants (as defined in the Third Amended Complaint) agreed to "administer" the musical compositions.  Deny that the Employment Agreement "expressly excludes Ett's songwriter services from is scope."  Admit the remainder of the allegations in Paragraph 2.

3.      Deny the allegations in Paragraph 3.

4.      Admit that Singer and Cameron started working at SMG in approximately 2011 and 2012, respectively.  Deny the remainder of the allegations in Paragraph 4.

5.      Admit that Singer and Cameron formed Lyric, a private equity firm.  Admit that they raised approximately $350 million from various private equity partners and then used Lyric to purchase SMG and its related entities, including SMC.  Deny the remainder of the allegations in Paragraph 5.

6.      Admit that Ett and SMC negotiated an amendment to the Employment Agreement in or around April 2019.  Deny the remainder of the allegations in Paragraph 6.

7.     Admit that SMC offered to extend Ett's term as CEO of SMC for an additional two years and increase his base salary slightly.  Deny the remainder of the allegations in Paragraph 7.

8.     Admit the allegations in Paragraph 8.

9.     Deny the allegations in Paragraph 9.

10.    Admit that one of Ett's attorneys emailed on July 20, 2021, outlining certain of Ett's complaints.  Admit that SMC terminated Ett on July 27, 2021.  Admit that Ett did not participate in the Northleaf transaction.  Deny the remainder of the allegations in Paragraph 10.

11.    Deny the allegations in Paragraph 11.

12.    Paragraph 12 is a conclusory argumentative paragraph to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 12.

## THE PARTIES

13.    Admit the allegations in Paragraph 13.

14.    Defendants are without knowledge or information sufficient to form a belief as to the conclusory allegations concerning Ett's historical activities and, on that basis, deny the allegations in Paragraph 14.

15.    Admit the allegations in Paragraph 15.

16.    Deny that SMC has a principal place of business in Los Angeles, California. Deny that SMC collects "residual income derived from the exploitation of musical works, including Ett's."  Admit the remainder of the allegations in Paragraph 16.

17.    Admit that SCH was a signatory to the APA and pursuant to Section 12.1 thereof, is jointly and severally liable for the payment obligations under Article 2 of the APA.  Deny the remainder of the allegations in Paragraph 17.

18.    Admit that LuxCo was a signatory to the APA.  Deny the remainder of the allegations in Paragraph 18.

19.    Admit the allegations in Paragraph 19.

## JURISDICTION

20.     Defendants do not contest subject matter jurisdiction.

21.     Defendants do not contest supplemental jurisdiction of Ett's state law claims.

22.     Defendants do not contest personal jurisdiction over SMG.

23.     Defendants do not contest personal jurisdiction over SMC, SCH or LuxCo.

24.     Defendants do not contest personal jurisdiction over Lyric.

## FACTUAL BACKGROUND

25.     Defendants are without knowledge or information sufficient to form a belief as to the conclusory allegations concerning Ett's historical activities and, on that basis, deny the allegations in Paragraph 25. Insofar as Ett's allegations concerning the APA are concerned, Defendants admit that Ett sold the assets of some of his companies to the APA Defendants and granted them certain rights in accordance with the terms of the APA; deny the remainder of the allegations in Paragraph 25 concerning the APA.

26.     Admit the allegations in Paragraph 26.

27.     Admit that pursuant to Section 2.1(a)(ii) of the APA, the APA Defendants purchased "[a] 75% undivided interest in and to the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions existing as of the Effective Time for which Ett is paid or credited as a writer or co-writer (the 'Ett Historic Writer Share')." Admit that pursuant to Section 2.1(a)(iii) of the APA, the APA Defendants purchased "[a] 50% undivided interest in and to the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions created after the Effective Time for which Ett is paid or credited as a writer or co-writer during the term of his employment with Purchaser (the 'Ett Future Writer Share')." Deny the remainder of the allegations in Paragraph 27.

28.     Deny the allegations in Paragraph 28.

29.     There is insufficient context for Ett's attempt to define "administration" and, on that basis, Defendants deny the allegations in Paragraph 29.

30.    Admit that pursuant to Section 2.2(a) of the APA, SMC and LuxCo agreed that they would "assume and thereafter shall pay and perform, satisfy and otherwise discharge all obligations and liabilities arising or accruing with respect to the Assets under the Assumed Contracts after the Effective Time (the 'Assumed Liabilities')."  Admit that SCH was a signatory to the APA and pursuant to Section 12.1 thereof, is jointly and severally liable for the payment obligations under Article 2 of the APA.  Admit that the APA defines the Assumed Contracts as the "Acquisition Documents, the Songwriter Agreements, the Production Contracts [sic] the Licenses and those Contracts listed [sic] Schedule 2.2(a)."  Admit that the APA includes definitions of "EBITDA," "Publishing Assets," and "Production Contracts."  Deny the remainder of the allegations in Paragraph 30.

31.    Deny Plaintiff's characterization of the additional payments detailed in the APA as the "Original Incentive Payments."  Admit the remainder of the allegations in Paragraph 31.

32.    Admit the allegations in Paragraph 32.

33.    Admit the allegations in Paragraph 33.

34.    Deny Plaintiff's characterization of the additional payments detailed in the APA as the "Original Incentive Payments."  Admit the remainder of the allegations in Paragraph 34.

35.    Admit the allegations in Paragraph 35.

36.    Admit the allegations in Paragraph 36.

37.    Admit the allegations in Paragraph 37.

38.    Admit that Ett's annual base salary under the Employment Agreement was $175,000 per year.  Admit that Ett was entitled to earn out and cash flow participation payments under the APA from January 1, 2017 through December 31, 2019.  Deny the remainder of the allegations in Paragraph 38.

39.    Admit that Section 7(e) of the Employment Agreement provides, in part, that "[e]xcept with respect to the results and proceeds of Executive's services as a songwriter, all discoveries, inventions, ideas, technology, formulas, designs, software, programs, algorithms, products, systems, applications, processes, procedures, methods and improvements and

enhancements conceived, developed or otherwise made or created or produce by Executive alone or with others, in whole at any time during the Employment Period with the Company, and in any way relating to the business activities which are the same as or substantially similar to the business activities carried on by the Company Group or being planned by the Company Group (as evidenced by written evidence), or the products or services of the Company Group, whether or not subject to patent, copyright or other protection and whether or not reduced to tangible form (to the extent of Executive's contributions, the 'Developments'), shall be the sole and exclusive property of the Company.  Executive agrees to, and hereby does, assign to the Company, without any further consideration, all of Executive's right, title and interest throughout the world in and to all Developments.  Executive agrees that all such Developments that are copyrightable may constitute works made for hire under the copyright laws of the United States and, as such, acknowledges that the Company or one of the members of the Company Group, as the case may be, is the author of such Developments and owns all of the rights comprised in the copyright of such Developments and Executive hereby assigns to the Company without any further consideration all of the rights comprised in the copyright and other proprietary rights Executive may have in any such Development to the extent that it might not be considered a work made for hire."  Deny the remainder of the allegations in Paragraph 39.

40.    Deny the allegations in Paragraph 40.

41.    Admit the allegations in Paragraph 41.

42.    Admit the allegations in Paragraph 42.

43.    Deny the allegations in Paragraph 43.

44.    Admit that Ett and SMC negotiated an amendment to the Employment Agreement.  Admit that as part of that negotiation Ett requested a raise and a bonus structure. Admit that Ett and SMC ultimately signed the Amendment, extending the term of Ett's employment with SMC by another two years, through December 31, 2021, increasing Ett's base salary to 200,000 as of January 1, 2020, and agreed that "[u]pon the Company's hiring of a new Operations/General Manger" Ett and SMC would "negotiate in good faith regarding the

establishment of an Incentive Plan applicable to [Ett]." Deny the remainder of the allegations in Paragraph 44.

45.    Admit that Singer and Ett discussed the possibility of Ett having a role at SMG in the future. Deny the remainder of the allegations in Paragraph 45.

46.    Admit that Ett and Singer discussed the concept of a management equity plan during their negotiations surrounding an Incentive Plan in connection with further amendment to his Employment Agreement. Deny the remainder of the allegations in paragraph 46.

47.    Admit that Singer's March 17, 2021 email to Ett is accurately quoted. Deny the remainder of the allegations in Paragraph 47.

48.    Admit that Singer told Ett he could not participate in SMG's management equity plan associated with Lyric's existing funds, Ett pushed back and Ett and Singer discussed various matters related to the issue, including similarities and/or differences between Ett and other executives. Deny the remainder of the allegations in Paragraph 48.

49.    Admit that in or around March 2021, SMC paid Ett a bonus of $72,000 for 2020. Deny the remainder of the allegations in Paragraph 49.

50.    Admit that as of July 2021, SMC and Ett had not agreed to terms of a potential Incentive Plan in connection with further amendment to his Employment Agreement and that one of Ett's attorneys sent an email on July 20, 2021 outlining certain of Ett's complaints. Admit that SMC terminated Ett on July 27, 2021. Deny the remainder of the allegations in Paragraph 50.

51.    Deny the allegations in Paragraph 51.

52.    Deny the allegations in Paragraph 52.

53.    Defendants are without knowledge or information sufficient to form a belief as to if and when Ett allegedly "learned that Singer and Cameron were working to recapitalize Lyric and the Spirit group of companies, including but not necessarily limited to SMG" and on that basis deny that allegation. Defendants are also without knowledge or information sufficient to form a belief as to whether Ett allegedly "believed he could help raise money through his broad

relationship in the music industry" and on that basis deny that allegation. Defendants admit that Ett asked to see the "investment book" and it was not provided to him. Defendants deny the remainder of the allegations in Paragraph 53.

54.     Admit that in October 2021 Lyric and Northleaf entered into what was reported in the media to be a $500 million strategic alliance. Deny the remainder of the allegations in Paragraph 54.

55.     Deny the allegations in Paragraph 55.

56.     The allegations in Paragraph 56 lack sufficient specificity to permit Defendants to respond, including, specifically with respect to the time period and scope addressed by the allegations, and on that basis, they deny the allegations in Paragraph 56.

57.     The allegations in Paragraph 57 lack sufficient specificity to permit Defendants to respond, including, specifically with respect to the time period and scope addressed by the allegations, and on that basis, they deny the allegations in Paragraph 57.

58.     The allegations in Paragraph 58 lack sufficient specificity to permit Defendants to respond, including, specifically with respect to the time period and scope addressed by the allegations, and on that basis, they deny the allegations in paragraph 58.

59.     Deny the allegations in Paragraph 59.

60.     Admit that it is and has always been Defendants' position that SMC (or its successor in interest) owns the copyrights for those musical compositions created by and for SMC (including during Ett's tenure as CEO. Admit that it is and has always been Defendants' position that SMC (or its successor in interest) is entitled to 100% of the publisher's share of royalties associated with the exploitation of the musical compositions created by and for SMC (including during Ett's tenure as CEO. Admit that it is and has always been Defendants' position that pursuant to Section 2.1(a)(iii), the APA Defendants (or their successors in interest) are entitled in perpetuity to "50% of the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions created after the Effective Time for which Ett

is paid or credited as a writer or co-writer during the term of his employment with Purchaser (the 'Ett Future Writer Share')."  Defendants deny the remainder of the allegations in Paragraph 60.

61.    Admit that it is and has always been Defendants' position that SMC (or its successor in interest) owns the copyrights for those musical compositions created by and for SMC (including during Ett's tenure as CEO).   Deny the remainder of the allegations in Paragraph 61.

62.    Admit that pursuant to Section 2.1(a)(iii) of the APA, the APA Defendants purchased "[a] 50% undivided interest in and to the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions created after the Effective Time for which Ett is paid or credited as a writer or co-writer during the term of his employment with Purchaser (the 'Ett Future Writer Share')."  Admit that Ett instructed BMI to pay SMC 50% of the income from the writer's share of royalties associated with the exploitation of  musical compositions for which Ett is paid or credited as a writer or co-writer and which were created after the Effective Time based on this provision.  Deny the remainder of the allegations in Paragraph 62.

63.    Admit that it is and has always been Defendants' position that pursuant to Section 2.1(a)(iii), the APA Defendants (or their successors in interest) are entitled in perpetuity to "50% of the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions created after the Effective Time for which Ett is paid or credited as a writer or co-writer during the term of his employment with Purchaser (the 'Ett Future Writer Share')."  Admit that the APA Defendants did not notify BMI that their right to that income reverted back to Ett because, in fact, no such reversion occurred.  Deny the remainder of the allegations in Paragraph 63.

64.    Admit that it is and has always been Defendants' position that SMC (or its successor in interest) is entitled to 100% of the publisher's share of royalties associated with the exploitation of the musical compositions created by and for SMC (including during Ett's tenure as CEO).  Deny the remainder of the allegations in paragraph 64.

65.     Admit that in March 2021, Cruz and Ett corresponded regarding the royalties received by SMC since the execution of the APA.  Deny the remainder of the allegations in Paragraph 65.

66.     Defendants are without knowledge or information sufficient to form a belief as to what statements were made by former employees of SMG and SMC and on that basis deny those allegations.  Deny the remainder of the allegations in Paragraph 66.

67.     Deny the allegations in Paragraph 67.

68.     Deny the allegations in Paragraph 68.

69.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 69 and on that basis deny them.

70.     Deny the allegations in Paragraph 70.

71.     Deny the allegations in Paragraph 71.

72.     Admit that Ett, through his counsel, sent an Indemnity Demand as referenced in Paragraph 72.  Deny the remainder of the allegations in Paragraph 72.

73.     Deny that the APA Defendants are required to indemnify Ett as claimed in the Indemnity Demand.  Admit the remainder of the allegations in Paragraph 73.

### <u>COUNT I</u>
### <u>Declaratory Judgment – Copyright Ownership (28 U.S.C. § 2201(a))</u>
### <u>(SMG, SMC, LuxCo, SCH, Lyric)</u>

74.     Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

75.     Deny the allegations in Paragraph 75.

76.     Deny the allegations in paragraph 76.

77.     Deny the allegations in Paragraph 77.

78.     Deny the allegations in Paragraph 78.

79.     Deny the allegations in Paragraph 79.

80.     Defendants do not contest that there is a justiciable controversy regarding ownership of the musical compositions created by and for SMC during Ett's tenure as CEO of SMC.  Defendants deny the remainder of the allegations in Paragraph 80.

81.     Defendants do not contest that there is a bona fide, actual and present need for a declaration by the Court as to that controversy.   Deny the remainder of the allegations in Paragraph 81.

82.     Defendants do not contest that there is a bona fide, actual and present need for a declaration by the Court as to that controversy.   Deny the remainder of the allegations in Paragraph 82.

83.     Deny the allegations in Paragraph 83.

## COUNT II
## Copyright Infringement of the Just Take Works
## (SMG, SMC, LuxCo and SCH)

84.     Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

85.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 85 and on that basis deny them.

86.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 86 and on that basis deny them.

87.     Deny the allegations in Paragraph 87.

88.     Deny the allegations in Paragraph 88.

89.     Deny the allegations in Paragraph 89.

## COUNT III
## Vicarious and Contributory Copyright Infringement
## (Lyric, LuxCo and SCH)

90.     Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

91.     Deny the allegations in Paragraph 91.

92.     Admit that SMC is no longer operating.  Deny the remainder of the allegations in Paragraph 92.

93.     Deny the allegations in Paragraph 93.

94.     Deny the allegations in Paragraph 94.

**COUNT IV**
**Breach of Contract – Asset Purchase Agreement**
**(SMC, SCH, LuxCo)**

95.     Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

96.     Admit the allgations in Paragraph 96.

97.     Deny the allegations in Paragraph 97.

98.     Deny the allegations in Paragraph 98.

99.     Deny the allegations in Paragraph 99.

**COUNT V**
**Breach of Oral Contract – Promise for Participation in Funds Capital Raises and/or Investments**
**(SMG, Lyric)**

100.     Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

101.     Deny the allegations in Paragraph 101.

102.     Deny the allegations in paragraph 102.

103.     Deny the allegations in Paragraph 103.

104.     Deny the allegations in Paragraph 104.

**COUNT VI**
**Unjust Enrichment**
**(SMG/Lyric)**

105.     Without prejudice to the pending Motion to Dismiss, Defendants reallege and incorporate their responses to the allegations contained in the preceding paragraphs.

106.     Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 106.

107.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 107.

108.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 108.

109.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 109.

110.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 110.

111.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 111.

112.    Without prejudice to the pending Motion to Dismiss, deny the allegations in Paragraph 112.

## PRAYER FOR RELIEF

Defendants deny that Ett is entitled to any of the relief sought in his prayer for relief. Further, Defendants seek an award of costs and reasonable attorney's fees, as permitted by law.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Claim)

1.    The Third Amended Complaint fails to allege facts upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.    Some or all of Ett's claims may be barred, in whole or in part, by the applicable statutes of limitation, including Section 507 of the Copyright Act, 17 U.S.C. § 507(b), Section 213 of the New York Consolidated Laws Civil Practice Law & Rules and Section 339 of the California Code of Civil Procedure.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Registration)

3.      Some or all of Ett's claims may be barred, in whole or in part, as a result of his failure to register copyrights in one or more of the musical compositions referenced in the Third Amended Complaint.

## FOURTH AFFIRMATIVE DEFENSE

### (License)

4.      Some or all of Ett's claims may be barred, in whole or in part, as a result of an express or implied license granted to one or more of the Defendants with respect to some or all of the musical compositions referenced in the Third Amended Complaint.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver/Abandonment)

5.      Some or all of Ett's claims may be barred, in whole or in part, based on the doctrines of waiver and abandonment of the copyrights to the musical compositions referenced in the Third Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

### (Fraudulent Concealment)

6.      Ett owned both music production companies that created "cues" or jingles for movies and television and music publishing companies that administered the publishing rights associated therewith.  On information and belief, prior to entering into the APA, Ett would credit himself as an author or co-author on some or all of the musical compositions created by and for his music production companies, irrespective of whether he actually wrote any portion of the musical compositions.

8.      During the negotiation of the APA between Ett and SMG in September 2016, this practice was discussed amongst at least Ett, Singer and Cameron.  Ett explained that this practice was appropriate because only individuals can receive income from the writer's share of royalties associated with the exploitation of the musical compositions.  Based on Ett's explanation, the

parties agreed that the practice would continue, but that with respect to musical compositions created during Ett's tenure as CEO of SMC, the parties would split, on a 50-50 basis, the income from the writer's share of royalties (or Ett's share thereof) associated with the exploitation of the musical compositions (including for the period after Ett ceased being employed by SMC). Accordingly, pursuant to Section 5.3 of the APA, the parties agreed that Ett's former companies would continue operating their businesses in the same manner that they operated when they were owned by Ett; Ett, now as CEO of SMC (the entity that housed both the music production and music publishing entities purchased from Ett) would continue to credit himself as an author or co-author on the musical compositions created by or for SMC; and pursuant to Section 2.1(a)(iii) of the APA, the parties would then split the income from the writer's share of royalties (or Ett's share thereof) associated with the exploitation of new musical compositions created during Ett's tenure as CEO of SMC.

9.      At no time prior to 2021, and despite owing fiduciary duties to SMC as its CEO post-execution of the Employment Agreement, did Ett inform Defendants of his intention to claim that by virtue of this practice he would be entitled to a copyright interest, and the attendant publisher's share of any royalties arising therefrom, in the musical compositions created by or for SMC for which he was credited as an author or co-author. Ett's claim runs afoul of Section 6.3 of the APA, which barred Ett from engaging in music publishing in competition with SMC, and would be inconsistent with both his fiduciary duties as CEO of SMC and the crux of the agreement between parties.

10.     Ett intentionally concealed his true intentions with the intent to defraud Defendants and induce SMC to permit the practice described above to continue. Had Ett informed Defendants of his true intentions, SMC would have changed the practice so that Ett would not be credited as an author of a musical composition created by or for SMC unless he actually wrote or co-wrote it.

## SEVENTH AFFIRMATIVE DEFENSE

### (Laches)

11.     Some or all of Ett's claims may be barred, in whole or in part, based on the doctrine of laches.

## EIGHTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

12.     Some or all of Ett's claims may be barred, in whole or in part, based on the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

### (Estoppel)

13.     Some or all of Ett's claims may be barred, in whole or in part, based on the doctrine of estoppel.

## TENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

14.     Some or all of Ett's claims may be barred, in whole or in part, based on the doctrine of unjust enrichment.

## COUNTERCLAIMS

Counter-Claimant SMC alleges as follows:

### THE PARTIES

1.     SMC is a Delaware limited liability company.

2.     Ett is an individual residing and domiciled in British Columbia, Canada.

### JURISDICTION

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this case involves federal claims arising under the Copyright Act, 17 U.S.C. ¶ 101 *et seq*.

4.     This Court has supplemental jurisdiction over SMC's state law claims pursuant to 28 U.S.C. § 1367 because the claims brought by SMC is so related to the claim in the Counterclaim within the Court's original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution and because they arise out of the same transactions and occurrences that are alleged in Ett's Third Amended Complaint.

5.     This Court has personal jurisdiction over Ett pursuant to Section 11.9 of the parties' 2017 Asset Purchase Agreement ("APA"), pursuant to which he consented to jurisdiction in the federal courts located in New York County, New York.

## RELEVANT FACTS

6.     The owner of a copyright in a music composition is entitled to performance, mechanical and sync royalties from such uses of the composition.  As a general matter, songwriters enter into publishing deals with publishers, who share in these royalties, offering administrative and promotional services in exchange for the publisher's share.  Performance royalties are typically split into two equal halves – the writer's share and the publisher's share.  The writer's share is paid to the songwriter; the publisher's share is paid to the publisher.  However, in the world of movie and television music production, it is standard practice that the music production company also takes a percentage of the income from the writer's share.

7.     Ett owned both music production companies that created "cues" or jingles for movies and television and music publishing companies that administered the publishing rights associated therewith.  On information and belief, prior to entering into the APA, Ett would credit himself as an author or co-author on some or all of the musical compositions created by and for his music production companies, irrespective of whether he actually wrote any portion of the musical compositions.

8.     On January 1, 2017, Ett and certain of Ett's music production and publishing companies ("Seller Companies") (with Ett, "Sellers"), on the one hand, and SMC, SCH and LuxCo ("Purchaser"), on the other hand, entered into the APA pursuant to which, among other things, the Purchaser acquired the assets of the Seller Companies, acquired varying percentages

of Ett's share of the income from the writer's share of royalties associated with the exploitation of both existing and future musical compositions and covenanted that there would be no change to the primary purpose of Seller Companies' business for three years.

9.      During the negotiation of the APA between Ett and Spirit Music Group, Inc. ("SMG"), in September 2016, Ett's practice of crediting himself as an author or co-author irrespective of whether he actually wrote any portion of the musical composition, was discussed amongst at least Ett, Singer and Cameron.  Ett explained that this practice was appropriate because only individuals can receive income from the writer's share of royalties associated with exploitation of the musical compositions.  Based on Ett's explanation, the parties agreed that the practice would continue, but that with respect to musical compositions created during Ett's tenure as CEO of SMC, the parties would split, on a 50-50 basis, the income from the writer's share of royalties (or Ett's share thereof) associated with exploitation of the musical compositions (including for the period after Ett ceased being employed by SMC).

10.     Accordingly, pursuant to Section 5.3 of the APA, the parties agreed that the Seller Companies would continue operating their businesses in the same manner that they operated when they were owned by Ett; Ett, now as CEO of SMC (the entity that housed both the music production and music publishing entities purchased from Ett) would continue to credit himself as an author or co-author on the musical compositions created by or for SMC; pursuant to Section 2.1(a)(iii) of the APA, Ett and Purchaser would then split, on a 50-50 basis, the income from the writer's share of royalties (or Ett's share thereof) associated with exploitation of new musical compositions created during Ett's tenure as CEO of SMC.

11.     In accordance with the APA, on January 1, 2017, Ett and SMC entered into a three-year employment agreement (the "Employment Agreement") whereby Ett would serve as part-time CEO of SMC.  Ett was only being engaged as a part-time CEO because he did not sell *all* of his companies to Purchaser.  Thus, pursuant to Section 2(b) of the Employment Agreement, Ett was permitted to devote a reasonable amount of time to "*outside* business activities" (emphasis added), including actual writing of songs and other activities of his

remaining companies.  However, pursuant to Section 6.3 of the APA, he was barred from engaging in music publishing in competition with Purchaser.

12.    In Section 7(e) of the Employment Agreement, Ett an SMC agreed that "except with respect to the results and proceeds of Executive's services as a songwriter, all discoveries, inventions, ideas, technology, formulas, designs, software, programs, algorithms, products, systems, applications, processes, procedures, methods and improvements and enhancements conceived, developed or otherwise made or created or produce by [Ett] alone or with others, in whole at any time during the Employment Period with the Company and in any way relating to the business activities which are the same as or substantially similar to business activities carried on by the Company Group or being definitely planned by the Company Group (as evidenced by written evidence), or the products or services of the Company Group, whether or not subject to patent, copyright or other protection and whether or not reduced to tangible form (to the extent of Executive's contributions, the 'Developments')" would be "the sole and exclusive property of the Company.  Executive agrees to, and hereby does, assign to the Company, without any further consideration, all of Executive's right, title and interest throughout the world in and to all Developments.  Executive agrees that all such Developments that are copyrightable may constitute works made for hire under the copyright laws of the United States and, as such, acknowledges that the Company or one of the members of the Company Group, as the case may be, is the author of such Developments and owns all of the rights comprised in the copyright of such Developments and Executive hereby assigns to the Company without any further consideration all of the rights comprised in the copyright and other proprietary rights Executive may have in any such Development to the extent that it might not be considered a work made for hire."

13.    The phrase "except with respect to the results and proceeds of Executive's services as a songwriter" does not refer to the continuation of the practice described above, where Ett would be identified as an author or co-author of works created by or for SMC to

facilitate the 50-50 split of income from the writer's share of royalties (or Ett's share thereof) associated with exploitation of new musical compositions created during Ett's tenure as CEO.

14.    Accordingly, SMC (or its successor in interest) owns the copyrights in the musical compositions created by and for SMC (including those created during Ett's tenure as CEO) and is entitled to receive 100% of the income from the publisher's share of royalties associated with the exploitation of the musical compositions.

15.    At no time prior to 2021, and despite owing fiduciary duties to SMC as its CEO post-execution of the Employment Agreement, did Ett inform SMC of his intention to claim that by virtue of Ett's practice of crediting himself as an author or co-author of musical compositions created by or for SMC, he would be entitled to a copyright interest and the attendant publisher's share of any royalties arising therefrom.  Ett's claim runs afoul of Section 6.3 of the APA, which barred Ett from engaging in music publishing in competition with SMC, and would be inconsistent with both his fiduciary duties as CEO of SMC and the crux of the agreement between parties.

16.    On October 28, 2019, Ett and SMC entered into an amendment to the Employment Agreement (the "Amendment"), which continued Ett's employment with SMC for another two years.  Thereafter, SMC negotiated with Ett in good faith regarding additional incentives for Ett's continued employment.  However, Ett and SMC never reached an agreement regarding the scope of those additional incentives.

17.    Unbeknownst to SMC, beginning in 2020 (or earlier), while he was still employed by SMC, in violation of Section 11.2 of the APA, Ett shared not only the APA, but also other confidential financial information of SMC, with third parties.

## COUNT I

### Breach of Contract – APA

18.    SMC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Counterclaim.

19.    SMC and Ett entered into the APA, which is a valid and binding contract.

20.     SMC fully performed its duties and obligations under the APA or was prevented or excused from doing so by the actions of Ett.

21.     Ett breached Section 11.2 of the APA by sharing not only the APA, but also other confidential financial information of SMC, with third parties.

22.     As a result of this breach, SMC is entitled to either nominal damagers or actual damages in an amount to be determined at trial.

## COUNT II

## Declaratory Judgment – APA

23.     SMC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Counterclaim.

24.     Pursuant to Section 2.1(a)(iii) of the APA, the Purchaser acquired "[a] 50% undivided interest in and to the Writer's Performance Income Share paid or credited to Ett in respect of any and all musical compositions created after the Effective Time for which Ett is paid or credited as a writer or co-writer during the term of his employment with Purchaser (the 'Ett Future Writer Share')."

25.     Thus, pursuant to that Section, when Ett ceased being employed as CEO of SMC, Ett and the Purchaser (or its successor in interest) would continue to split the income derived from the portion of the writer's share credited to Ett for those musical compositions that were created during the term of his employment.

26.     There is a dispute between SMC and Ett concerning the split of income from the writer's share of royalties (or Ett's share thereof) associated with the exploitation of musical compositions created after the Purchaser acquired the Seller Companies and while Ett served as CEO of SMC.  SMC contends that under the APA, Ett and the Purchaser (or its successor in interest) share such income equally in perpetuity.  Ett contends that once he was no longer employed by SMC, he was entitled to 100% of such income.  Ett's contention is based on a fundamental misinterpretation of Section 2.1(a)(iii) of the APA.  Essentially, Ett contends that the phrase "during the term of his employment with Purchaser" refers to the time period for

which the Purchaser acquired "a 50% undivided interest" in the musical compositions. However, the phrase "during the term of his employment with Purchaser" clearly refers to the works for which the Purchaser acquired "a 50% undivided interest" – namely, "all musical compositions created after the Effective Time for which Ett is paid or credited as a writer or co-writer during the term of his employment with Purchaser." For all such musical compositions, Purchaser acquired "a 50% undivided interest" – in perpetuity.

27.    Accordingly, there is an actual, present and justiciable controversy between SMC and Ett and a bona fide, actual and present need for a declaration by the Court as to that controversy (consistent with SMC's position in Paragraph 25).

## COUNT III
## Declaratory Judgment – Copyright Ownership (28 U.S.C. § 2201(a))

28.    SMC realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Counterclaim.

29.    After the Purchaser acquired the Seller Companies and while Ett served as CEO of SMC, the production contributions made to the musical compositions created by and for SMC were, to the extent Ett was involved, made in the scope of his employment as CEO of SMC. As a result, any production contributions to said musical compositions, belonged to SMC pursuant to Section 7(e) of the Employment Agreement, Section 201(b) of the Copyright Act and Section 6.3 of the APA.

30.    There is a dispute between SMC and Ett concerning the ownership of the copyrights, and the attendant publisher's share of any royalties arising therefrom, in the musical compositions created by or for SMC after the Purchaser acquired the Seller Companies and while Ett served as CEO of SMC. SMC contends that all such copyrights and income belong to SMC. Ett contends that all such copyrights and income belong to him.

31.    Accordingly, there is an actual, present and justiciable controversy between SMC and Ett and a bona fide, actual and present need for a declaration by the Court as to that controversy (consistent with SMC's position in Paragraph 30).

**PRAYER FOR RELIEF**

**WHEREFORE**, SMC respectfully demands judgment as follows:

A.       An order directing Ett to identify all third parties with whom he shared the APA and other confidential information of SMC and an award of nominal or actual damages as a result of Ett's breach of the confidentiality provision of the APA;

B.       A declaration that with respect to income from the writer's share of royalties (or Ett's share thereof) associated with the exploitation of musical compositions created after the Purchaser acquired the Seller Companies and while Ett served as CEO of SMC, Ett and the Purchaser (or its successor in interest) share such income equally in perpetuity;

C.       A declaration that with respect to musical compositions created by or for SMC after the Purchaser acquired the Seller Companies and while Ett served as CEO of SMC, as between SMC and Ett, SMC (or its successor in interest) owns the copyrights in said musical compositions and 100% of the income from the publisher's share of royalties associated with the exploitation of those musical compositions;

D.       An award of costs and reasonable attorney's fees, as permitted by law; and

E.       An award of such other relief as this Court may deem just and proper.

///

///

///

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendants and Counter-Claimant, and each of them, demand a trial by jury of all issues so triable.

Dated:  August 26, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Bridget J. Russell_____
Paul W. Garrity
Jonathan Stoler
pgarrity@sheppardmullin.com
jstoler@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Martin D. Katz (admitted pro hac vice)
Bridget J. Russell (admitted pro hac vice)
brussell@sheppardmullin.com
mkatz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701
Attorneys for *Defendants and Counterclaimant*
