UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN ETT,<br><br>             Plaintiff,<br><br>     v.<br><br>SPIRIT MUSIC GROUP, INC., SPIRIT MUSIC COLLECTIVE, LLC, SPIRIT CATALOGUE HOLDINGS SARL, SPIRIT MUSIC COLLECTIVE SARL, and LYRIC CAPITAL MANAGEMENT GROUP, LP,<br><br>          Defendants. | Case No.: 1:24-cv-676<br><br><br>**FOURTH AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Alan Ett ("Ett"), by his attorneys, Manatt, Phelps & Phillips, LLP, alleges the following in support of his claims and causes of action against Spirit Music Group, Inc. ("SMG"), Spirit Music Collective, LLC ("SMC"), Spirit Catalogue Holdings, SARL ("SCH"), Spirit Music Collective SARL ("LuxCo"),[1] and Lyric Capital Management Group, LP ("Lyric and, collectively with SMG, SMC, SCH, and LuxCo, the "Defendants").

## NATURE OF THE ACTION

1.  This case concerns a prolific composer and seasoned music industry executive who entrusted the fruits of his life's work—in excess of 150,000 musical compositions—to Defendants, only to see Defendants undermine and deprive him of the full value of the music empire he had painstakingly built, and lay claim to copyrights that rightfully belong to him.

---

[1] In footnote 1 to Defendants' Answer And Affirmative Defenses To Plaintiff's Third Amended Complaint And Counter-Claimant's Counterclaim Against Counter-Defendant Alan Ett (Dkt. 35), Defendants state without explanation that Ett "erroneously sued" the entity "Spirit TMC SARL" as LuxCo. To the extent this statement is correct, all allegations herein concerning LuxCo shall apply with equal force to LuxCo and Spirit TMC SARL.

2.      On January 1, 2017, Ett entered into two contracts with certain of the Defendants. Ett entered into an employment agreement with SMC (the "Employment Agreement"), pursuant to which he was to serve as CEO of SMC for a period of three years. Ett also entered into an asset purchase agreement (the "Asset Purchase Agreement" or "APA") with LuxCo and SMC (collectively, the "APA Defendants"),[2] pursuant to which, among other things, the APA Defendants acquired assets of certain of Ett's companies and certain royalty streams from his musical compositions, and agreed to "administer" the compositions – *i.e.*, register them with performing rights organizations and the Copyright Office, collect and account to him for royalties they generate, and otherwise monetize them (the "Administration Obligations"). However, the Employment Agreement expressly excludes Ett's songwriter services from its scope.

3.      The Employment Agreement and the APA worked in tandem. For example, while the salary that Ett received to serve as SMC's CEO was very modest given his decades of experience in the music industry, the APA provided for several additional payments to him (the "Original Incentive Payments") that would supplement his salary. Further underscoring the interrelationship between the two agreements, Ett's rights to the Original Incentive Payments under the APA were coterminous with the three-year term of the Employment Agreement.

4.      On information and belief, Singer and Cameron started working at SMG in approximately 2011 and 2012, respectively. From the beginning, Singer and Cameron were opposed to SMG's decision (made through its then-CEO David Renzer) to have SMC, SCH, and LuxCo enter into the APA, and to hire Ett as CEO of SMC. Singer and Cameron treated Ett with disdain, were dismissive of the value of Ett's music catalogs (despite the fact they generated millions of dollars in revenues every year), and their actions conveyed to Ett in no uncertain terms

---

[2] SCH also is a party to the APA, but only insofar as it was jointly and severally responsible for certain payments to Ett, as set forth below.

that the bulk of the music in them – comprised of musical "cues" typically used in television shows and commercials – was "beneath" SMG.

5.      On information and belief, in or around 2018, Singer and Cameron formed Lyric, a private equity firm. On information and belief, in or around late 2018 or early 2019, after raising approximately $350 million from various private equity partners, Singer and Cameron used Lyric to purchase SMG and its related entities, including SMC. Upon taking control of SMG and SMC, Singer, Cameron, and Lyric denied Ett the resources necessary to run SMC properly and support his catalogs—catalogs that Singer and Cameron never wanted to begin with.

6.      In or around April 2019, Singer approached Ett about extending the term of Ett's Employment Agreement. On information and belief, Singer wanted Ett to continue on as CEO because Lyric was in the process of attempting to secure a lucrative third-party investment in SMG and its related companies (collectively, "Spirit"), and Ett's music industry experience, along with the value of the royalty streams that SMC, and in turn SMG, was entitled to while Ett was CEO, made Spirit, including but not necessarily limited to SMG and SMC, a more desirable opportunity for potential investors. Singer thus needed to present Ett with a compelling offer to persuade Ett to remain as SMC's CEO, particularly because, as noted above, Ett's entitlement to the Original Incentive Payments would end at the same time the term of his Employment Agreement expired at the end of 2019. In fact, without that additional compensation, Ett stood to *lose* a substantial amount of money while continuing to work for SMC because the APA entitled SMC to a large portion of his writer share royalties during the term of his employment.

7.      A number of promises were made to Ett to convince him to stay at SMC. First, Singer, on behalf of SMC, offered to (i) extend Ett's term as CEO of SMC for an additional two years; (ii) increase Ett's base salary slightly; and (iii) provide Ett with a bonus structure that would approximate the Original Incentive Payments that would no longer be available after 2019. Second,

SMG and Lyric (via Singer) promised Ett that, in exchange for Ett taking on additional responsibilities for SMG, Ett would receive a participation or interest in the form of a "carried interest" or otherwise in connection with any future investments in Spirit and/or future music royalty funds raised by Lyric to expand the Spirit catalog.

8.      On October 28, 2019, Ett and Joseph Borrino, in his capacity as COO/CFO of SMG, signed on SMC's behalf an amendment to the Employment Agreement under which SMC promised to "negotiate in good faith regarding the establishment of an Incentive Plan" for Ett (the "Amendment").

9.      On information and belief, Lyric and SMG subsequently solicited offers for investments in Spirit, ultimately securing in or around October 2021 an approximately $500 million investment from Northleaf Capital Partners, a global private markets firm, and Caisse de dépôt et placement du Québec (collectively, "Northleaf"), a global investment group. On information and belief, Lyric and SMG, through Singer and Cameron, negotiated the Northleaf deal for many months, touting Ett's experience, and his royalty streams, to make SMG more attractive to Northleaf. Despite this and Ett's prominent role within the Spirit group of companies, Lyric, SMG, Singer, and Cameron kept Ett entirely in the dark about the Northleaf transaction, never mentioning it to him once – let alone that they were even contemplating it.

10.      In or around mid-July 2021, over 19 months into the two-year term of the Amendment and more than two years after SMG, via Singer, first promised Ett a participation or interest in future funds, and with no bonus structure in sight, Ett asked his attorney to address these issues with SMC, SMG, and Singer and Cameron, SMG's and Lyric's principals. They responded to Ett's attorney's outreach by having SMC fire Ett—without notice, as required by the Employment Agreement, and without allowing Ett to participate in the Northleaf transaction. On information and belief, Lyric, SMG, Singer, and Cameron fired Ett in order to cut him out of that

transaction, which closed just three months after his termination, and retained for themselves Ett's promised participation or interest in the deal.

11.     To add insult to injury, the APA Defendants, SMG, and Lyric have taken the position that (i) they, not Ett, own on a work for hire basis the copyrights in his contributions to the musical compositions that he wrote or co-wrote during the term of his employment with SMC (even though, as noted above, the Employment Agreement expressly excludes Ett's songwriting services from its scope); and (ii) more astoundingly, that the APA Defendants are entitled to portions of Ett's royalties from these compositions *in perpetuity*.

12.     This lawsuit seeks to restore Ett's rightful ownership rights in tens of thousands of his musical compositions, vindicate infringements of his works, and compensate him for Defendants' various forms of malfeasance.

## THE PARTIES

13.     Ett is an individual residing and domiciled in British Columbia, Canada. Ett was previously domiciled in Los Angeles, California.

14.     Ett is a lifelong musician, prolific songwriter, composer, and producer. He has composed and produced music for television, video, film, and commercials. Ett has also been a successful entrepreneur and executive, having founded and run numerous music companies and other ventures. Additionally, Ett has collaborated on the production of various technological advancements in the music industry, including MIDI software, was on the faculty of Berklee College of Music, and serves on the boards of many foundations.

15.     On information and belief, SMG is a Delaware corporation with its principal place of business in Manhattan. On information and belief, SMG is the parent company of SMC. SMG is a music publishing company that provides music services, including composition, music supervision, editing, and mastering, as well as clearance, administration, and licensing.

16.    On information and belief, SMC is a Delaware limited liability company with its principal place of business in Los Angeles, California. SMC previously provided various music industry services, including music publishing and administration services, but, on information and belief, no longer does so. On information and belief, SMC eliminated all its employees in 2022, disabled its website, and has limited its activities to collecting residual income derived from the exploitation of musical works, including Ett's.

17.    On information and belief, SCH is a Luxembourg limited liability company. It is a signatory to the APA, and, pursuant to Section 12.1 thereof, is jointly and severally liable for the payment obligations under Article 2 of the APA.

18.    On information and belief, LuxCo also is a Luxembourg limited liability company. It, too, is a signatory to the APA.

19.    On information and belief, Lyric is a Delaware limited partnership headquartered in Manhattan. It is a private equity firm focused on investing in music rights and is the parent company of SMG. On information and belief, in late 2018, Singer and Cameron formed Lyric, and used it as a vehicle to acquire Spirit, including but not necessarily limited to SMC, SMG and some or all of SMC's and SMG's assets, when Lyric took control of the companies from their prior leadership and investors.

## JURISDICTION

20.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this case involves federal claims arising under the Copyright Act, 17 U.S.C. § 101 *et seq*.

21.    This Court has supplemental jurisdiction over Ett's state law claims pursuant to 28 U.S.C. § 1367 because those state law claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

22.     This Court has personal jurisdiction over SMG because its principal place of business is in Manhattan.

23.     This Court has personal jurisdiction over SMC, SCH, and LuxCo pursuant to Section 11.9 of the APA, pursuant to which they (i) consented to the jurisdiction of the federal and state courts located in New York County, New York; (ii) agreed that any action brought under APA shall be brought in such courts; (iii) agreed that the APA is governed by New York law; and (iv) irrevocably waived objections on the grounds of venue, forum non-conveniens, or any similar grounds.

24.     This Court has personal jurisdiction over Lyric because, on information and belief, its principal place of business is in Manhattan.

## **FACTUAL BACKGROUND**

### **A.**     **The Asset Purchase Agreement**

25.     Ett, for many years, owned and operated various music companies, including music publishing and administration companies. These companies helped to distribute, administer and monetize musical compositions created by Ett and others, largely in the form of "cues". On January 1, 2017, Ett entered into the APA. Under the APA, Ett sold to the APA Defendants assets of some of his companies, and granted them differing rights in certain royalty streams in some of his compositions. Ett's claims here implicate the following provisions of the APA.

### 1.     The APA Defendants' Limited Rights In Ett's Royalty Streams

26.     Royalties in musical compositions are typically divided between the composer(s)/writer(s) of the compositions (the "writer share") and their publisher(s) (the "publisher share"). Such royalties come from various sources, including so-called "public performance" income. Public performance income refers to monies paid for the public performance of a musical composition, such as on television, streaming services, or radio, or in a restaurant or bar.

27.     The APA entitled the APA Defendants to two specified portions of Ett's writer's share of public performance income. Under Section 2.1(a)(ii) of the APA, the APA Defendants obtained the right to receive in perpetuity 75 percent of Ett's writer's share of public performance income from musical compositions he authored or co-authored prior to January 1, 2017 (the "Historic Compositions"). Under Section 2.1(a)(iii), the APA Defendants obtained the right to receive *only during the term of Ett's employment with SMC*, 50 percent of Ett's writer's share of public performance income from musical compositions he authored or co-authored from and after January 1, 2017 (the "New Compositions").

28.     The limited and temporary income interest in the latter provision is the *only* right in the New Compositions that Ett granted to any of the Defendants. Thus, except for the narrow right to receive during the term of Ett's employment 50 percent of the public performance income associated with Ett's writer share in the New Compositions, none of the Defendants has any right or interest of any kind in these works. Accordingly, apart from that proscribed right, none of the Defendants ever acquired (i) any ownership interest in the copyrights in Ett's contributions to the New Compositions; (ii) any right to Ett's publisher share income from the New Compositions; or (iii) any right to any other revenue from the New Compositions to which Ett is entitled.

            2.      The APA Defendants' Administration Obligations

29.     The "administration" of musical compositions refers to the day-to-day management and accounting functions necessary to monetize and protect the rights in them. As noted above, the tasks associated with these functions include registering the compositions with performing rights organizations and the Copyright Office, collecting and distributing royalties they generate, and otherwise ensuring that the compositions are properly monetized.

30.     Pursuant to Section 2.2(a) of the APA, the APA Defendants agreed to "assume and . . . pay and perform, satisfy and otherwise discharge all obligations and liabilities" accruing with

respect to "Assets", including, among other things, royalty streams associated with the Historic Compositions and the New Compositions. Various other provisions of the APA also confirm these obligations, including its definitions of "EBITDA", "Publishing Assets", and "Production Contracts", all of which refer to the APA Defendants' administration obligations.

3.    Ett's APA Earn Outs and Free Cash Flow Participation

31.    Ett received $4.8 million under the APA for the sale of certain assets of his and his companies. Ett was entitled to additional payments – the Original Incentive Payments noted above – depending on how those assets performed from January 1, 2017 through December 31, 2019. This additional compensation was comprised of APA Earn Outs and Free Cash Flow Participation, as defined and discussed immediately below.

32.    Within 90 days after the end of fiscal years 2017, 2018, and 2019, the APA Defendants were to provide Ett with their calculations of the APA Defendants' EBITDA, as defined in the APA, for the preceding year. If the APA Defendants' EBITDA exceeded certain thresholds for that year, the APA entitled Ett to a contractually-specified multiple of the amount – subject to certain caps – by which the APA Defendants' EBITDA exceeded the threshold (the "APA Earn Outs").

33.    Ett also was entitled to receive 20 percent of the APA Defendants' "Free Cash Flow", which was the sum of (a) all cash distributions by the APA Defendants to the "Spirit Group" from January 1, 2017 to December 31, 2019; (b) all payments of principal or interest by the APA Defendants on any debt through December 31, 2019; (c) all payments by the APA Defendants to "Spirit Group" or its "Affiliates" other than as provided in a mutually approved Budget; and (d) all cash held by the APA Defendants on January 1, 2020 (the "Free Cash Flow Participation").

34.    From January 1, 2017 through December 31, 2019, Ett received approximately $1.6 million in Original Incentive Payments in the form of APA Earn Outs and Free Cash Flow Participation.

    4.    <u>The APA Defendants' Indemnity Obligations</u>

35.    Under Section 8.3 of the APA, SMC, LuxCo, and solely to the extent SMC and LuxCo's payment obligations under Article 2 are implicated, SCH, agreed to indemnify, hold harmless and defend Ett (and his relevant companies) from and against any and all Adverse Consequences resulting from, arising out of, relating to, in the nature of, or caused by, directly or indirectly, among other things, any breach of any covenant or agreement of SMC or LuxCo contained in the APA. The APA defines "Adverse Consequences" as "all Actions, orders, damages, dues, penalties, fines, costs, diminutions in value, amounts paid in settlement, Liabilities, obligations, Taxes, liens, losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses."

    **B.**    **The Employment Agreement**

36.    On January 1, 2017, the same day he signed the APA, Ett also signed the Employment Agreement with SMC.

37.    Under the Employment Agreement, Ett served as SMC's CEO, reporting, initially, directly to David Renzer and Singer, the Chairman and COO of SCH, respectively. Following Renzer's departure in early 2019, Ett reported directly to Singer as CEO of SMG. As CEO of SMC, Ett managed the day-to-day operations of SMC, including oversight of employees, sales, and operations. The Employment Agreement was to last three years, from January 1, 2017 through December 31, 2019.

38.     Ett's annual base salary under the Employment Agreement was $175,000 per year. In addition to his base salary, Ett was entitled to earn the Original Incentive Payments under the APA from January 1, 2017 through December 31, 2019.

39.     As is typical in many executive contracts, the Employment Agreement stated that "all discoveries, inventions, ideas" and the like that Ett created during his employment were the "sole and exclusive property" of SMC. This grant of rights has one significant exclusion: it expressly excluded "the results and proceeds of [Ett's] services as a songwriter" because such services were outside the scope of his employment.

40.     Taking the Employment Agreement and the APA together, and subject to one limited exception, Ett retained the copyrights in his contributions to and the entire publisher and writer share income interests associated with his copyrights in the New Compositions. The limited exception was that the APA entitled SMC to 50 percent of Ett's writer's share of public performance in the New Compositions, *but only while Ett worked for SMC*. Thus, once Ett stopped working for SMC, the latter 50 percent income interest reverted to him, giving him – in addition to his other rights in the New Compositions – the right to all income from his writer shares in these works.

**C.      Singer and Cameron Form Lyric, Buy SMG and SMC**

41.     On information and belief, at the time Ett entered into the APA and Employment Agreement, SMG owned a portfolio of music publishing companies.

42.     On information and belief, in or around late 2018 or early 2019, Singer and Cameron formed their own private equity company, Lyric. Shortly thereafter, Singer and Cameron used Lyric to take over the Spirit group of companies, including but not necessarily limited to SMC and SMG, from their prior leadership, buying out the prior owners, Pegasus Capital Advisors and Fortress Credit Corporation.

11

**D.**    **SMG and Lyric Convince Ett to Remain SMC's CEO, Resulting in SMC and Ett Signing an Amendment to the Employment Agreement**

43.    On information and belief, following Lyric's acquisition of the SMG group of companies, Singer and Cameron subsequently began soliciting third-party investments in Lyric. On information and belief, during that process, Singer and Cameron touted Ett's music industry experience and the value of the royalty streams to which SMC was entitled during the course of Ett's employment (and copyright ownership rights and royalty streams to which SMC was not entitled, as set forth below), to position Lyric as a more lucrative investment opportunity.

44.    Given the value of having Ett remain as CEO during this process, and of having Ett's New Compositions on SMC's books, SMC (via Singer) asked Ett to sign an amendment to the Employment Agreement with SMC (the "Amendment"). In order to sign the Amendment, Ett requested a raise and bonus structure that would approximate the value of the Original Incentive Payments (to which Ett would no longer be entitled after December 31, 2019). Ett and SMC ultimately signed the Amendment, extending the term of Ett's employment with SMC by another two years, through December 31, 2021; slightly increased Ett's base salary to $200,000 as of January 1, 2020 – an amount that was still well below-market for a CEO of Ett's caliber; and required SMC and Ett "to negotiate in good faith regarding the establishment of an Incentive Plan applicable to [Ett]", *i.e.*, a bonus structure.

**E.**    **Lyric and SMG Promise Ett a Participation in Future Funds, Capital Raises And/Or Investments**

45.    Around the same time that SMC and Ett were negotiating the Amendment, by mutual agreement with Lyric and SMG, Ett began to take on a larger role with SMG—including by creating and participating in a management Executive Committee, and coordinating efforts between and among various Spirit entities—to maximize efficiency and profitability. Lyric and SMG (via Singer) repeatedly emphasized that Ett was important to SMG, and that Singer wanted

Ett to have a bigger role in driving the direction of SMG. In exchange for the additional services Ett was to provide to SMG, SMG promised Ett participation in existing and/or future funds, capital raises and/or investments that Lyric/SMG were able to secure, including the existing fund originally used by Lyric to acquire SMG and SMC.

46.    On information and belief, Singer, Lyric, and SMG were also aware that when a private equity-backed company receives an investment, it is industry standard for company executives like Ett to receive incentive-based compensation from such capital funds; this can be in the form of a "carried interest" in such capital funds (*e.g.*, a percentage of an investment that executives of an investment manager typically receive as compensation), or another form of incentive-based compensation based on an allocation of the fund manager's profits tied to fund performance upon a realization event ("Incentive Allocations"). Indeed, Ett discussed these types of Incentive Allocations with Singer repeatedly during in-person meetings, phone calls, and emails.

47.    In fact, from approximately April 2019 to July 2021, Singer and Cameron repeatedly led Ett to believe that his participation in existing and/or future funds, capital raises and/or investments would be forthcoming while making excuses for why his Incentive Allocations could not be finalized. For example, on March 17, 2021, Singer wrote to Ett: "In regard to Management equity we thoroughly discussed this and as you will recall let you know we will consider your participation in future funds *which we are currently working on.*" (Emphasis added).

48.    Singer eventually backed away from the position that Ett could participate in the existing fund originally used by Lyric to acquire SMG, SMC, and related entities and assets from their prior owners because the fund was allegedly "closed". This prompted Ett to challenge Singer, noting the relevant industry standards and the value brought to the company by Ett and other executives like SMG's Chief Financial Officer/Chief Operating Officer, Joseph Borrino. When Ett

asked Singer whether Borrino would receive a carried interest in the existing fund, Singer

responded that he would because Borrino was his "boy", and that Singer would "take care" of him,

but not Ett. However, Singer did reiterate that SMG and Lyric would provide Ett with participation

in future funds, capital raises and/or investments.

    **F.**      **SMC Fails to Negotiate the Incentive Plan in Good Faith, Fires Ett, and Replaces Him With a Younger Executive**

49.    Despite its promises, SMC never fully negotiated or implemented the Incentive

Plan's bonus structure in good faith. Instead, SMC paid Ett a one-time "bonus" of $72,000 in or

around March 2021 —a far cry from the Original Incentive Payments that Ett previously received

under the APA.

50.    By July 2021, with just six months left of the two-year term of the Amendment,

SMC still had not finalized Ett's bonus structure. At his wits end, Ett asked his attorney to contact

SMC to discuss and negotiate the Incentive Plan. SMC responded by promptly terminating Ett on

July 27, 2021, without cause, and without the notice required by the Employment Agreement.

51.    Ett's termination was further carried out on the heels of his raising concerns to

executives like Singer, Cameron, and Borrino surrounding their mismanagement of the

administrative functions of the companies they had acquired from Ett, and SMC's lack of adequate

staff to maintain client relationships.

52.    On information and belief, soon after SMC wrongfully fired Ett, SMG enlisted a

younger music executive to create a new company, separate from SMG, to administer and exploit

the assets that Ett and the Seller Companies had sold to the APA Defendants—the ultimate

manifestation of the disdain that Singer, Cameron, SMG, and Lyric had long-exhibited toward Ett's

catalog and Ett.

**G.**      **Singer, Cameron, SMG, and Lyric Procure an Investment from Northleaf**

53.      In or around mid-2020, Ett learned that Singer and Cameron were working to recapitalize Lyric and the Spirit group of companies, including but not necessarily limited to SMG. Ett asked to see the investment book because he believed he could help raise money through his broad relationships in the music community. Singer and Cameron said they would provide Ett with the book when it was done. But, despite Ett's larger role in SMG, they never provided this document to Ett. On information and belief, Singer and Cameron did not share the investment book with Ett to prevent Ett from learning (and alerting potential investors) that Lyric/SMG were misrepresenting SMC's interests in Ett's Historic Compositions and the New Compositions.

54.      In October 2021—approximately three months after Ett's unlawful termination—Lyric successfully procured what was reported in the media to be a $500 million capital infusion in Spirit via its deal with Northleaf. On information and belief, Lyric, SMG, Singer, and Cameron used Ett and his copyright interests and royalty streams to support a higher valuation for Lyric—only to terminate Ett's employment, and cut him out of the Northleaf deal just as he was about to realize the benefit of his bargain.

**H.**      **The APA Defendants Fail to Administer the Historic Compositions and the New Compositions**

55.      Defendants' unlawful conduct did not stop (or start) with Ett's termination or the Northleaf deal.

56.      The APA Defendants failed (and continue to fail) to administer Ett's Historic Compositions and New Compositions. For instance, the APA Defendants failed to register tens of thousands of Ett's New Compositions with his applicable performing rights organizations, depriving Ett of significant revenue.

57.     The APA Defendants also failed to consistently maintain and update SMC's own database and search engine of its musical works, resulting in the failure to add thousands of the New Compositions, as well as their relevant metadata. Having an incomplete database meant that potential clients were (and continue to be) unable to access and license those missing works. This administrative failure means that potential clients in over 90 territories all over the world have had no visibility into the availability of a great many of the New Compositions, resulting in significant losses of licensing revenue. To make matters worse, it recently came to Ett's attention that the APA Defendants removed upwards of 30,000 of Ett's works out of its catalogs for no apparent reason.

58.     The APA Defendants' delinquency was caused, in large part, because they were demonstrably understaffed, tasking only one employee with handling all registrations with the two principal performance rights organizations, Broadcast Music, Inc. ("BMI") and the American Society of Composers, Authors and Publishers ("ASCAP"). When Ett told Borrino that SMC needed to hire more staff, Borrino rejected the suggestion, and refused to increase headcount even though SMC had terminated and never replaced an upper-level employee a few years earlier. Shortly thereafter, the sole employee handling performing rights organization registrations quit, exposing Ett to the loss of crucial revenue from thousands of Post- 2017 Compositions (both through BMI and societies abroad).

59.     These failures deprived Ett of the benefit of his bargain under the APA, and were in keeping with Singer and Cameron's disdain for Ett's style of music and their perception of its lack of value to SMG.

**I.      Defendants Improperly Claim Ownership in Ett's Copyrights and Royalty Streams**

60.     After terminating Ett, the APA Defendants, SMG, and Lyric took the astonishing position that they (i) own the copyrights in *all* of Ett's contributions to the New Compositions; (ii) are entitled to 100 percent of Ett's publisher share of all royalties, including, without limitation,

16

public performance income, from the New Compositions; and (iii) are entitled to 50 percent of

Ett's writer's share of public performance income from the New Compositions *in perpetuity*,

instead of during the course of his employment with SMC, as the APA states.

61.    *Copyright Ownership*. Ett never assigned SMC or any of the other Defendants the

copyrights in his contributions to the New Compositions. Further, as noted above, the Employment

Agreement expressly excludes Ett's songwriting services from its scope, foreclosing any possibility

that SMC or any of the other Defendants own those copyrights as works made for hire. Despite

this, after Ett's termination, the APA Defendants, SMG, and Lyric took the position that *they* alone

own the copyrights in the New Compositions because Ett prepared his contributions to them on a

work for hire basis. The APA Defendants, SMG, and Lyric have no factual or legal support for

their position.

62.    *Writer's Share of Public Performance Income*. Under the APA, the APA

Defendants acquired "[a] 50% undivided interest in and to the Writer's Performance Income Share

paid or credited to Ett in respect of any and all musical compositions created after the Effective

Time [of the APA] for which Ett is paid or credited as a writer or co-writer *during the term of his

employment with [SMC]*", *i.e.*, the New Compositions (emphasis added). In accordance with this

provision, Ett instructed BMI, his principal royalty collection society, to pay SMC 50 percent of his

writer share of public performance royalties from the New Compositions. On information and

belief, this assignment, which was only intended to last for the duration of Ett's employment with

SMC, resulted in SMC receiving more than $1.2 million by 2021, an amount that dwarfed Ett's

base salary under the Employment Agreement.

63.    Notwithstanding the above, after Ett's termination, the APA Defendants, SMG, and

Lyric took the position that they are entitled to 50 percent of Ett's writer share of public

performance income from the New Compositions *in perpetuity*. The APA Defendants also have

refused to notify BMI that their right to that income has reverted back to Ett. On information and belief, following Ett's termination in July 2021, one or more of the Defendants have received and improperly retained at least $752,000 in writer share royalties from the New Compositions that belong to Ett.

64.     *Publisher Share Royalties*. Ett never assigned SMC or any of the other Defendants any interest in his publisher share of public performance or any other royalties from the New Compositions. And, as noted above, the Employment Agreement expressly excludes Ett's songwriter services from its scope. Nevertheless, since Ett's termination, Lyric, SMG, and SMC have asserted without any factual or legal basis that SMC owns the entirety of his publisher share of public performance and other royalties from the New Compositions, and have refused to turn over these royalties to Ett.

65.     Before April 2021, none of the Defendants ever questioned or otherwise expressed any doubt to Ett that he alone was entitled to the publisher share of royalties from his contributions to the New Compositions. To the contrary, the actions of Lyric, SMG, and SMC prior to that time, demonstrated their understanding and agreement that he alone was entitled to those royalties. This is apparent from the fact that, in or around March 2021, SMC's controller, Bernard Cruz, and Borrino (SMG's COO and CFO, respectively) worked with Ett to calculate the amount of such royalties he was owed from January 2017 through March 2021. On information and belief, Lyric, SMG, and SMC would not have had Cruz and Borrino undertake that effort unless they (Lyric, SMG, and SMC) understood and agreed that Ett alone was entitled to the publisher share of royalties from his contributions to the New Compositions.

66.     Borrino estimated Ett could be owed anywhere from $300,000 to $3,000,000 for that timeframe. Following his examination of SMC's receipts, Cruz acknowledged that, as of early

2021, SMC had collected at least $729,000 in publisher share royalties from the New Compositions that belonged to Ett.

67.    In or around April 2021, after learning how much these royalty streams were worth, Singer stated to Ett for the first time that SMC, not Ett, owned the copyrights in Ett's contributions to the New Compositions, and, therefore, that SMC, not Ett, was entitled to the entire publisher share of royalties from these compositions.

68.    On information and belief, one or more of the Defendants have received and improperly retained no less than $2.552 million in publisher share royalties from the New Compositions that belong to Ett.

**J.    The APA Defendants and SMG Infringe Ett's Copyrights in "Just Take What You Need"**

69.    In 2021, Ett wrote and recorded the musical composition "Just Take What You Need" (the "Just Take Composition" and "Just Take Recording", respectively) under the pseudonym Ryan Earl. Ett is the sole owner of the copyrights in the Just Take Composition and the Just Take Recording (collectively, the "Just Take Works"), for which the U.S. Copyright Office issued him registration SR 985-086.

70.    Without Ett's knowledge or consent and in violation of his rights under the Copyright Act, on information and belief, the APA Defendants and/or SMG purported to license the use of the Just Take Works in the television program "Grand Ole Opry: 95 Years of Country Music" (the "Infringing Derivative Work"), which program NBC recorded and initially aired on September 16, 2021. On information and belief, the APA Defendants and SMG – or third parties purportedly authorized by them – also reproduced and/or distributed the Infringing Derivative Work after its initial airing.

71.    On information and belief, the APA Defendants and SMG have similarly exploited without Ett's consent, and, therefore, infringed his exclusive rights under the Copyright Act in other New Compositions that he owns. Ett currently is unable to provide additional details for this infringing activity because Defendants have withheld and refused to make available to him relevant records, including, without limitation, cue sheets and licensing agreements, that would allow him to do so. Once Ett obtains these records, he will further amend his pleading as appropriate and necessary to particularize such other wrongdoing in further detail.

### K.    The APA Defendants Fail to Indemnify Ett for His Losses

72.    On June 24, 2024, Ett, through his undersigned counsel, provided notice to the APA Defendants of Ett's claim for indemnity under the APA. On July 2, 2024, Ett sent an updated indemnity demand (the "Indemnity Demand"). In it, Ett requested indemnity for all Adverse Consequences (as defined in the APA) resulting from (1) SMC and LuxCo's wrongful retention and claimed ownership, following Ett's termination from SMC on July 27, 2021, of 50 percent of Ett's writer's share of public performance income for the Historic Compositions, and SMC and LuxCo's refusal to notify BMI that that share should revert to Ett, in breach of Section 2.1(a)(iii) of the APA; and (2) SMC and LuxCo's breach of their agreement to administer Ett's compositions pursuant to Section 2.2(a) of the APA.

73.    Ett requested that the APA Defendants respond to the Indemnity Demand by July 12, 2024, indicating whether they intended to fulfill their indemnity obligations. The APA Defendants did not respond to the Indemnity Demand, and have not indemnified Ett, as required.

## COUNT I

## Declaratory Judgment – Copyright Ownership (28 U.S.C. § 2201(a))

## (SMG, SMC, LuxCo, SCH, and Lyric)

74.     Ett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

75.     Neither Lyric, SMG, SCH or the APA Defendants ever received from Ett – under the APA, the Employment Agreement, or otherwise – a transfer of ownership of his copyright interests in the New Compositions pursuant to Sections 201(d) of the Copyright Act, 17 U.S.C. § 201(d). Nor did Ett prepare the New Compositions as works made for hire for those entities (or anyone else) pursuant to Sections 101 and 201(b) of the Copyright Act, 17 U.S.C. §§ 101 and 201(b). Indeed, the Employment Agreement forecloses any inference that Ett did so because it expressly excludes Ett's songwriting services from its scope.

76.     Ett also never transferred to Lyric, SMG, SCH or the APA Defendants – under the APA, the Employment Agreement, or otherwise – any interest in his publisher share of royalties in the New Compositions.

77.     For the New Compositions that were co-authored by Ett and third-party composers, Lyric, SMG, SCH and/or the APA Defendants are only entitled to the share of the copyrights in these works that the *third-party composers* assigned to them or that they acquired from *these other composers* on a work for hire basis.

78.     Lyric, SMG, SCH and the APA Defendants have nevertheless unlawfully laid claim to the entirety of Ett's copyright ownership interests in and publisher share royalties from the New Compositions, including, without limitation, by way of Singer erroneously stating to Ett that the New Compositions are works made for hire.

21

79.     On information and belief, SMG and/or Lyric caused SMC to transfer to them some or all of Ett's copyright interests and administration rights in the New Compositions. As a result, on information and belief, SMG and/or Lyric now maintain that they—or one or more entities under their control—supposedly are the holders of such interests and rights, and collect and retain for their own account all revenues generated by the New Compositions, excluding only the 50 percent of the writer royalties associated with Ett's contributions to the New Compositions that he receives directly from BMI.

80.     In light of the foregoing, an actual, present, and justiciable controversy exists as to the parties' adverse legal rights, interests, and obligations pertaining to the ownership of the copyrights in the New Compositions and the parties' attendant entitlement to the publisher share of royalties they generate.

81.     The controversy between Ett, on the one hand, and Lyric, SMG, SCH and the APA Defendants, on the other hand, is substantial and immediate, and adversely impacts the parties' legal interests in a manner that is both real and immediate.

82.     A declaration of the parties' respective rights will serve a useful purpose in clarifying and settling these legal issues, and a judgment would finalize the controversy and offer relief from uncertainty.

83.     On this basis, Ett also is entitled to an accounting from Lyric, SMG, SCH and/or the APA Defendants for any profits made from the New Compositions that were received and wrongfully retained by Lyric, SMG, SCH and/or the APA Defendants, including, without limitation Ett's publisher share royalties from the New Compositions, which Ett believes is no less than $2.552 million.

## COUNT II

## Copyright Infringement of the Just Take Works

## (SMG, SMC, LuxCo, and SCH)

84.     Ett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

85.     Ett is the sole author of and sole owner of all right, title, and interest, including, without limitation, the worldwide copyrights, in the Just Take Works, both of which are original, fixed, and copyrightable works within the subject matter of copyright pursuant to 17 U.S.C. §§ 102(a)(2) and (7).

86.     The APA Defendants, SCH and SMG are neither the owners nor the licensees of any rights in the Just Take Works.

87.     On information and belief, the APA Defendants, SCH and/or SMG licensed the Just Take Works to third parties without Ett's consent, including in connection with the Infringing Derivative Work, in violation of Ett' rights under 17 U.S.C. §§ 106(1), (2), (3), (4) and (6).

88.     On information and belief, the APA Defendants, SCH and SMG have similarly exploited without Ett's consent, and, therefore, infringed his exclusive rights under the Copyright Act in other New Compositions that he owns. Ett currently is unable to provide additional details for this infringing activity because Defendants have withheld and refused to make available to him relevant records, including, without limitation, cue sheets and licensing agreements, that would allow him to do so. Once Ett obtains these records, he will further amend his pleading as appropriate and necessary to particularize such other wrongdoing in further detail.

89.    The APA Defendants, SCH and/or SMG are liable to Ett for, among other things, the profits they realized from, and the actual damages he sustained as a result of, their wrongdoing, the specific amounts of which are to be determined at trial.

## COUNT III

## Vicarious and Contributory Copyright Infringement

## (SMG, LuxCo, and SCH)

90.    Ett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

91.    In the alternative to Count II as to SMG, LuxCo, and SCH, these entities are vicariously and/or contributorily liable under the Copyright Act for the infringement of Ett's copyrights in the Just Take Works, including in connection with the Infringing Derivative Work, in violation of Ett' rights under 17 U.S.C. §§ 106(1), (3), (4), and (6), as detailed above.

92.    While SMC seems to no longer be a fully functioning or operating company, upon information and belief, LuxCo, SCH, and/or SMG continue to collect income derived from musical works previously administered by SMC, including in connection with the exploitation of the Just Take Works as part of the Infringing Derivative Work.

93.    On information and belief, in addition to being under the common control of Singer and Cameron, LuxCo, SCH, and/or SMG derive a direct economic benefit from and have the right to direct SMC's commercial activities, and, on information and belief, knew of and had the ability to stop SMC's infringing conduct vis-à-vis the Just Take Works, but elected not to do so.

94.    LuxCo, SCH, and/or SMG are liable to Ett for, among other things, the profits they realized from, and the actual damages he sustained as a result of, their wrongdoing, the specific amounts of which are to be determined at trial.

24

## COUNT IV

## Breach of Contract – Asset Purchase Agreement

## (SMC, SCH, and LuxCo)

95.    Ett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

96.    SMC, SCH, and LuxCo entered into the APA with Ett, which forms a valid and binding contract.

97.    Ett fully performed all of his duties and obligations under the APA, or was prevented or excused from doing so by the actions of SMC, SCH, and LuxCo, and their agents and/or representatives.

98.    SMC, SCH, and LuxCo, variously, breached the APA in the following respects:

(a) SMC, SCH, and LuxCo breached their obligations under Section 2.1(a)(iii) by retaining 50 percent of Ett's writer's share of public performance royalties from the New Compositions after his employment with SMC ended, and by refusing to notify BMI that that share reverted to Ett as of July 27, 2021, thereby damaging Ett in an amount to be determined at trial, but believed to be not less than $750,000;

(b) SMC and LuxCo breached their contractual obligations under Section 2.2(a) to administer Ett's New Compositions; and (c) SMC, LuxCo and/or SCH breached their contractual obligations under Section 8.3 by failing to indemnify Ett for all Adverse Consequences resulting from the actions described in this paragraph 98(a) and (b).

99.    The foregoing breaches of the APA by SMC, SCH, and LuxCo have caused Ett actual damages in an amount to be determined at trial, including, without limitation, based on their

unlawful retention of writer share royalties that belong to him; and the income from the New

Compositions he has lost as a result of SMC and LuxCo's ongoing failure to administer them.

## COUNT V

## Breach of Oral Contract – Promise For Participation In Funds, Capital Raises And/Or Investments

## (SMG, Lyric)

100.    Ett realleges and incorporates by reference each and every allegation contained in

each of the preceding paragraphs of the Complaint with the same force and effect as if fully set

forth at length herein.

101.    Ett entered into an oral contract with SMG whereby Ett would provide services to

SMG, and, in return, SMG would provide Ett with a participation in SMG's existing and/or future

funds, capital raises and/or investments. This oral agreement constitutes a valid and binding

contract between Ett and SMG.

102.    Ett fully performed all of his duties and obligations to SMG under the oral contract,

or was prevented or excused from doing so by the actions of Defendants, their agents, and/or

representatives.

103.    SMG breached the oral contract by failing to provide Ett with a participation in

existing and/or future funds, capital raises and/or investments, including the Northleaf transaction,

as promised.

104.    SMG's breach of the oral contract to provide Ett with a participation in existing

and/or future funds, capital raises and/or investments has caused Ett actual damages in an amount

to be determined at trial.

### COUNT VI

### Unjust Enrichment

### (SMG, Lyric)

105.    Ett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

106.    To the extent the Court concludes that Ett does not have an enforceable agreement with SMG and/or Lyric, Ett alleges in the alternative that SMG and Lyric have been unjustly enriched at his expense.

107.    Ett performed services for SMG and/or Lyric, including, but not limited to, creating and participating in a management Executive Committee, and coordinating efforts between and among various Spirit entities to maximize efficiency and profitability. SMG and/or Lyric were enriched by these services at Alan's expense, including in connection with the Northleaf transaction. It is thus against equity and good conscience to allow Spirit and/or Lyric to retain the value of Ett's services without compensating him.

108.    As a result of SMG and Lyric's actions, Ett has suffered injury, and is entitled to restitution in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** Ett respectfully demands judgment as follows:

A. Declaring that Ett owns all right, title, and interest, including, without limitation, the worldwide copyrights, inclusive of the writer share and publisher share ownership and income interests, in and to all of the New Compositions, excluding only the portion of such rights that belong to or were acquired from any co-writers of Ett's on such works;

B. Declaring the Defendants have no right to any portion of Ett's writer's share of public performance income from the New Compositions as of July 27, 2021 (the date of Ett's termination from SMC);

C.  Ordering that Defendants account to Ett for all his publisher share royalties from the New Compositions that Defendants have received and failed to remit to him since January 1, 2017;

D.  Ordering that Defendants account to Ett for any profits received from the New Compositions that Defendants have received and failed to remit to him since July 27, 2021, including, without limitation, for all his writer share royalties and his portion of profits received in connection with the Northleaf Transaction;

E.  Awarding Ett monetary damages, including disgorgement of Defendants' ill-gotten gains, resulting from Defendants' unlawful actions, plus interest, in an amount to be determined at trial in this matter, including:

1.  At least $3.304 million representing the minimum amount of Ett's publisher share and writer share royalties from the New Compositions that Defendants received and failed to remit to him;

2.  Ett's actual damages suffered and Defendants' ill-gotten gains in connection with Defendants' infringement of the copyrights in the Just Take Works and any other musical works owned by him;

3.  An amount equal to the value of Ett's services to SMG and/or Lyric;

4.  Compensatory damages for breach of contract; and

5.  Prejudgment and post-judgment interest.

F.  Ordering that Defendants indemnify Ett for all Adverse Consequences under Section 8.3 of the APA, including Ett's reasonable attorneys' fees and expenses.

G.  Entering a permanent injunction ordering Defendants to:

1.  Immediately cease and desist from making any further claim to or collecting any portion of Ett's writer share of public performance royalties derived from the New Compositions after July 27, 2021;

2.  Immediately cease and desist collecting any such writer share of public performance royalties of Ett's from the New Compositions, and account to and reimburse Ett for all such monies collected since July 27, 2021;

3.  Immediately notify BMI and any other performing rights organization or other collection societies from which Defendants collect public performance royalties or any other types of royalties that Defendants do not maintain any ownership, interest, or share in Ett's writer share of public performance royalties from the New Compositions after July 27, 2021, or from any of Ett's publisher share of public performance royalties or any other type of royalty from the New Compositions; and that BMI's registrations thereof and, if applicable, those of ASCAP or any other royalty collection societies, should be amended as appropriate, and that all money

currently owed or owed in the future should be paid directly to Ett;

4. Immediately arrange for the proper administration and registration at Defendants' sole expense of the unregistered New Compositions (a) with BMI and other appropriate performing rights organizations around the world identifying Ett as the sole recipient of all public performance income associated with his writer and publisher shares in the New Compositions; and (b) with the Copyright Office identifying Ett as the author or co-author of, as applicable, and copyright claimant in the New Compositions;

5. Immediately reinstate the improperly removed compositions (approximately 30,000) to the SMC catalog, and add any missing New Compositions to SMC's database and search engine;

6. Immediately cease and desist from any continued claim to ownership in and to Ett's portion of the copyrights in and publisher share of income from the New Compositions;

7. Immediately cease and desist collecting any such publisher share income of Ett's from the New Compositions, and reimburse Ett for all such monies collected since January 1, 2017;

8. Immediately cease and desist from any continued claim to copyright ownership in and to any share of the copyrights, or writers or publisher's share of income for the Just Take Works; and

H. Awarding Ett his costs and reasonable attorney's fees as applicable; and

I. Awarding such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Ett demands a trial by jury as to all issues so triable.

Dated:  New York, New York

September 9, 2024

MANATT, PHELPS & PHILLIPS, LLP

/s/ Robert A. Jacobs
Robert A. Jacobs
Samantha J. Katze
Sarah E. Moses (Admitted
*Pro Hac Vice*)
Times Square Tower
7 Times Square

New York, New York 10036
Telephone: (212) 790-4500
Facsimile: (212) 790-4545
Email: RJacobs@manatt.com
Email: SKatze@manatt.com
Email: SMoses@manatt.com
*Attorneys for Plaintiff Alan Ett*

Andrea Del-Carmen Gonzalez
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
Email: ADGonzalez@manatt.com
*Of Counsel for Plaintiff Alan Ett*